M. ANDERSON BERRY (262879)
aberry@justice4you.com
LESLIE GUILLON (222400)
lguillon@justice4you.com
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829

JOHN A. YANCHUNIS (*Pro Hac Vice*)
jyanchunis@ForThe People.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

RACHELE R. BYRD (190634)
byrd@whafh.com
BRITTANY N. DEJONG (258766)
dejong@whafh.com
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, California
Telephone: (619) 239-4599
Facsimile: (619) 234-4599

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| *IN RE: HANNA ANDERSSON AND SALESFORCE.COM DATA BREACH LITIGATION*<br><br>This Document Relates To: ALL ACTIONS | Master File No.: 3:20-cv-00812-EMC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE:     December 24, 2020<br>TIME:     1:30 p.m.<br>COURTROOM:  Courtroom 5 – 17th Floor<br>JUDGE:     Hon. Edward M. Chen |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ..............................................................................................................1

II.     STATEMENT OF FACTS ...............................................................................................2

III.    PROCEDURAL HISTORY ..............................................................................................4

IV.     THE SETTLEMENT TERMS ..........................................................................................5

    A.  Proposed Settlement Class ...................................................................................5

    B.  The Settlement Fund ............................................................................................5

    C.  Business Practice Changes ...................................................................................6

    D.  Class Notice and Settlement Administration .......................................................7

    E.  Attorneys' Fees and Expenses .............................................................................8

    F.  Service Awards to Named Plaintiffs ....................................................................9

    G.  Releases .............................................................................................................10

V.      ARGUMENT .................................................................................................................10

    A.  The Court Should Certify the Class for Settlement Purposes ............................10

        1.  The Rule 23(a) Requirements Are Met for Purposes of Settlement ..........10

        2.  The Requirements of Rule 23(b) Are Met for Purposes of Settlement .........11

    B.  The Settlement Should be Preliminarily Approved ...........................................12

        1.  The Strength of Plaintiffs' Case ...............................................................14

        2.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation .................15

        3.  The Risk of Maintaining Class Action Status Through Trial ....................17

        4.  The Amount Offered in Settlement ...........................................................17

        5.  The Extent of Discovery Completed and the Stage of Proceedings ..........19

        6.  The Experience and Views of Counsel .....................................................19

        7.  The Reaction of the Class Members to the Proposed Settlement ...............20

        8.  Lack of Collusion Among the Parties .......................................................20

    C.  The Court Should Approve the Proposed Notice Program .................................20

    D.  Appointment of the Settlement Administrator ...................................................21

    E.  Appointment of Settlement Class Counsel ........................................................22

    F.  Schedule for Final Approval ..............................................................................22

VI.     CONCLUSION ..............................................................................................................22

## TABLE OF AUTHORITIES

### Cases

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)............................................................................................................10

*Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027-BLF,
2020 U.S. Dist. LEXIS 74801
(N.D. Cal. Feb. 5, 2020).....................................................................................................19

*Cotter v. Lyft, Inc.,*
193 F. Supp. 3d 1030 (N.D. Cal. 2016) ...........................................................................12

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ............................................................................................10

*G. F. v. Contra Costa Cty.*, No. 13-cv-03667-MEJ,
2015 U.S. Dist. LEXIS 100512
(N.D. Cal. July 30, 2015)...................................................................................................20

*Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE),
2010 U.S. Dist. LEXIS 71996
(S.D.N.Y. June 25, 2010)...................................................................................................15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)...........................................................................................11

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018)................................................................................12, 19

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ............................................................................................14

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*,
No. 17-md-02777-EMC,
2019 U.S. Dist. LEXIS 75205
(N.D. Cal. May 3, 2019).....................................................................................................10

*In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK,
2014 U.S. Dist. LEXIS 110064
(N.D. Cal. Aug. 8, 2014)....................................................................................................12

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015).......................................................................................12

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...............................................................................................8

*In re Pacific Enterprises Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .................................................................................................8

*In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807,
  2019 U.S. Dist. LEXIS 135573
  (N.D. Ohio Aug. 12, 2019) ...................................................................................19

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007). ...............................................................12

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  2017 U.S. Dist. LEXIS 75455
  (D. Minn. May 17, 2017) ......................................................................................18

*In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522-PAM,
  2015 U.S. Dist. LEXIS 155137
  (D. Minn. Nov. 17, 2015) .......................................................................................9

*In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522-PAM
  (D. Minn. March 18, 2015) ...................................................................................18

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT
  2017 U.S. Dist. LEXIS 221736
  (N.D. Ga. Sept. 22, 2017) .....................................................................................18

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT
  (N.D. Ga. Aug. 23, 2016) .......................................................................................9

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT
  (N.D. Ga. Mar. 7, 2016) ...................................................................................8, 18

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
  266 F. Supp. 3d 1 (D.D.C. 2017) .........................................................................15

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
  928 F.3d 42 (D.C. Cir. June 21, 2019) ..................................................................16

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK
  (N.D. Cal. July 20, 2019) ......................................................................................12

*Just Film, Inc. v. Buono,*
  847 F.3d 1108 (9th Cir. 2017) .........................................................................11, 12

*Linney v. Cellular  Alaska P'ship,*
  151 F.3d 1234 (9th Cir. 1998) .........................................................................15, 19

*O'Connor v. Uber Techs., Inc.*,
  201 F. Supp. 3d 1110 (N.D. Cal. 2016) ................................................................12

*Parsons v. Kimpton Hotel & Rest. Group, LLC*, No. 3:16-cv-05387-VC
  (N.D. Cal. Jan. 9, 2019) .......................................................................................12

*Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG,
  2020 U.S. Dist. LEXIS 206507
  (N.D. Cal. Nov. 4, 2020) .......................................................................................19

*Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW,
    2017 U.S. Dist. LEXIS 38574
    (M.D. Ala. Mar. 17, 2017) ...................................................................................................17

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) .........................................................................................21

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...............................................................................................11

*Stuart v. RadioShack Corp.*, No. C-07-4499 EMC,
    2010 U.S. Dist. LEXIS 92067
    (N.D. Cal. Aug. 9, 2010) ........................................................................................................8

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) .........................................................................................................12

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ........................................................................................8

*Vandervort v. Balboa Capital Corp.*,
    8 F. Supp. 3d 1200 (C.D. Cal. 2014) .....................................................................................8

*Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC,
    2017 U.S. Dist. LEXIS 23220
    (N.D. Cal. Feb. 17, 2017) .....................................................................................................10

*Vizciano v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .............................................................................................................11


**Other Authorities**

Manual for Complex Litigation, § 21.632 ..................................................................................10


**Rules**

Fed. R. Civ. P. 23(a) .................................................................................................................10
Fed. R. Civ. P. 23(a)(1) ...........................................................................................................10
Fed. R. Civ. P. 23(b)(3) ............................................................................................................2
Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................................21
Fed. R. Civ. P. 23(e)(1)(B) ......................................................................................................21
Fed. R. Civ. P. 23(e) ...............................................................................................................13
Fed. R. Civ. P. 23(g)(1)(A)(i–iv) .............................................................................................22
Fed. R. Civ. P. 23(g)(1)(B). .....................................................................................................22

## I.    INTRODUCTION

Plaintiff Bernadette Barnes and Plaintiffs Krista Gill and Doug Sumerfield (collectively, "Plaintiffs") initiated this action against Hanna Andersson, LLC ("Hanna") and salesforce.com, inc. ("Salesforce," and, collectively, "Defendants") by filing complaints on February 3, 2020 and March 30, 2020, respectfully, and together filed a Consolidated Amended Class Action Complaint (the "Complaint") on June 3, 2020.   Plaintiffs allege that Hanna experienced a security incident whereby unauthorized third parties accessed via Hanna's third-party ecommerce platform, Salesforce Commerce Cloud, Hanna's customers' Personal Information ("PII") used to purchase products from Hanna's website from September 16, 2019, to November 11, 2019 (the "Security Incident").   Plaintiffs further allege that the hackers exfiltrated everything they need to illegally use Hanna's customers' credit cards to make fraudulent purchases and that law enforcement subsequently found the stolen names and card information for sale on the dark web where criminals can acquire PII for malicious activity and identity theft.

The parties engaged in a day-long mediation session on June 19, 2020, before mediator Martin Quinn, Esq, where they reached a resolution that – if accepted – will resolve the litigation and provide substantive relief to the approximately 200,273 Settlement Class Members ("Class Members").[1]   The parties have negotiated a settlement providing for a $400,000 Settlement Fund to be used as the exclusive source of payment to Settlement Class Members, costs of Claims Administration, payments made to the Claims Referee to resolve any disputed claims, any Attorneys' Fees and Expenses Award, and any Class Representative Service Awards (the "Settlement").   Settlement Class Members will have the option of claiming a cash payment of up to $500 for a Basic Award or of up to $5,000 for an Extraordinary Expense Award, subject to proration if there are insufficient funds to pay these amounts based

---

[1]      Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Settlement Agreement and Release (the "Agreement" or "Settlement Agreement" or "S.A."), attached to the Joint Declaration of John A. Yanchunis, M. Anderson Berry and Rachele R. Byrd in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Joint Decl.") as Exhibit 1.

on the number of claimants.   On the other hand, these amounts may be increased by up to double if there are sufficient funds to do so.  If any funds remain in the Settlement Fund after distribution to Settlement Class Members, the balance will be distributed to a *cy pres* recipient to be selected by the Parties and approved by the Court.

Plaintiffs strongly believe the Settlement is fair, reasonable and adequate and that the Court should grant it preliminary approval and notice distributed to Class Members.   The Settlement provides quick relief for Class Members, including compensation for the alleged unauthorized dissemination of their PII.  Accordingly, Plaintiffs respectfully request the Court preliminarily approve the Settlement and enter an Order:

1) Certifying the Settlement Class for purposes of settlement under Fed. R. Civ. P. 23(b)(3);

2) Preliminarily approving the Settlement as fair, reasonable, and adequate;

3) Directing the dissemination of Class Notice to the Class Members in the form and manner proposed by the parties as set forth in the Settlement Agreement as Exhibits B and C thereto (S.A., ¶ 1.12);

4) Appointing Angeion Group LLC ("Angeion") to serve as the Claims Administrator;

5) Appointing Plaintiffs as Class Representatives for settlement purposes and their counsel as Class Counsel; and

6) Setting a Final Approval Hearing date and a schedule for the briefing on: (a) Plaintiffs' motion for final approval of the Settlement; and (b) Class Counsel's motion for an Attorneys' Fees and Expenses Award and Class Representative Service Awards.

## II.     STATEMENT OF FACTS

Hanna is a Delaware company with its principal place of business in Portland, Oregon. ¶ 12.[2]  Hanna has sold high-end children's clothing through mail order and retail stores since

---

[2]      References to "¶" are to the Complaint, unless otherwise noted.

1983. ¶ 17.  The company mostly sells clothing for babies through preteens, but recently added a women's collection and home furnishings. *Id*.

Businesses like Hanna use Salesforce Commerce Cloud to provide websites for their customers to purchase items online.  The Salesforce Commerce Cloud provides a cloud-based, unified e-commerce platform, or platform as a service ("PaaS"), with mobile, AI personalization, order management capabilities, and related services for business to customer and business to business companies.  ¶¶ 18, 20.  Plaintiffs allege that the platform takes the key payment and personal information from the customer to finalize the transaction: name, billing and shipping addresses, payment card type and number, CVV (security) code, credit card expiration date, email address and telephone number.  ¶ 21.  Salesforce touts the secure nature of its PaaS e-commerce platform on its website by stating, for example, "Security protocols and infrastructure are constantly analyzed and updated to address new threats," and "Some of the world's largest companies moved their applications to the cloud with Salesforce after rigorously testing the security and reliability of our infrastructure."[3]  ¶ 22.

Hanna similarly assures its customers that it is concerned about PII security by stating:

The security of your personal information is very important to Hanna, and we have implemented measures to ensure your information is processed confidentially, accurately, and securely. Our website is [Payment Card Industry Data Security Standards ("PCI DSS")][4] compliant and uses SSL/TLS (Secure Sockets Layer) technology to encrypt your order information, such as your name, address, and credit card number, during data transmission.  We use a third-party payment processor, which is also PCI DSS compliant.[5]

---

[3]     *What Is Cloud Computing?*, Salesforce.com, Inc., *available at*: https://www.salesforce.com/products/platform/best-practices/cloud-computing/?d=70130000000i88b (last accessed on November 19, 2020).

[4]     The PCI Security Standards Council has formulated PCI DSS, which define measures for ensuring data protection and consistent security processes and procedures around online financial transactions. Businesses that store, process, or transmit payment card data are required to comply with PCI DSS. Businesses that fail to maintain PCI DSS compliance are subject to steep fines and penalties.

[5]     *Privacy Statement*, Hanna Andersson, LLC, *available at*: https://www.hannaandersson.com/security-and-privacy.html# (last accessed November 19, 2020).

¶ 23.

To purchase items on Hanna's website, customers can either create an account or check out as a guest. Either choice requires, at a minimum, that the customer enter the following PII onto the website: name; billing and shipping addresses; telephone number; email address; name on the credit card; type of credit card; full credit card number; credit card expiration date; and security code, or CVV code (card verification number). ¶ 26.

On or about January 15, 2020, Hanna sent customers a *Notice of Security Incident,* informing them that an unauthorized third party had accessed information entered on Hanna Andersson's website during purchases made between September 16 and November 11, 2019, and that the incident potentially involved "information submitted during the final purchase process on our website, www.hannaandersson.com, including name, shipping address, billing address, payment card number, CVV code, and expiration date." ¶ 28.   On that same day, January 15, 2020, Hanna's counsel mailed a different *Notification of Security Incident* to the Attorneys General of the states where affected customers reside, including California, which also disclosed that "credit cards used on [Hanna's] website were available for purchase on a dark web site," and that Hanna's "third-party ecommerce platform, Salesforce Commerce Cloud, was infected with malware that may have scraped information entered by customers" during the purchase process.   ¶ 30.   Hanna also reported that it was cooperating with law enforcement and "has taken steps to re-secure the online purchasing platform on its website and to further harden it against compromise, including increasing use of multi-factor authentication and enhanced system monitoring." *Id*.

### III.    PROCEDURAL HISTORY

After Hanna issued the *Notice of Security Incident*, three class action cases were filed within 30 days of each other.   One of the cases was voluntarily dismissed and the other two were consolidated on March 5, 2020, before the Honorable Edward M. Chen.   Plaintiffs filed their Complaint on June 3, 2020, alleging six causes of action: (1) negligence; (2) declaratory relief;  (3) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; (4) violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et*

*seq.*; and (5) violation of the Virginia Personal Information Breach Notification Act, Va. Code Ann. § 18.2-186.6, *et seq.*  Plaintiffs sought several types of equitable and monetary relief on behalf of all persons whose PII was compromised as a result of Defendants' alleged failure to: (i) adequately protect its users' PII; (ii) warn users of its inadequate information security practices; and (iii) effectively monitor Hanna's website and ecommerce platform for security vulnerabilities and incidents. Plaintiffs alleged that Defendants' conduct amounted to negligence and violated several California statutes.

Subsequently, the parties informally exchanged discovery with respect to Plaintiffs' purchases and injuries as well as the class allegations.  The parties also drafted and exchanged mediation briefs and then participated in an all-day mediation with Martin Quinn, Esq. on June 19, 2020. The mediation was successful; the parties agreed in principle to the terms of a Settlement that day and thereafter executed a Term Sheet on July 20, 2020.  The Parties then negotiated the terms of the Settlement Agreement and its exhibits over the subsequent four months.  The Settlement Agreement was executed by all parties on November 18, 2020.

## IV.   THE SETTLEMENT TERMS

### A.   Proposed Settlement Class

The Settlement will provide relief for the following Settlement Class: "All individuals residing in the United States who made purchases from the Hanna Andersson website from September 16, 2019 to November 11, 2019."  The Settlement Class contains approximately 200,273 individuals.  Joint Decl., ¶ 10.  The Settlement Class is the same in substance as the Nationwide Class defined in the Complaint:  "All individuals whose PII was compromised in the data breach announced by [Hanna] on January 15, 2020."  ¶ 68.[6]

### B.   The Settlement Fund

Hanna has agreed to create a Settlement Fund in the amount of $400,000, which will be used to make payments to Settlement Class Members and to pay the costs of Claims Administration, a Claims Referee to resolve any disputed claims, any Attorneys' Fees and

---

[6]     The California and Virginia subclasses are subsumed within the Nationwide Class and also the Settlement Class. ¶¶ 69-70.

Expenses Award, and any Service Awards.  S.A., §§ 1.38, 2.1.  Hanna will pay the first $200,000 of the Settlement Fund to the Claims Administrator within 10 business days following entry by the Court of the Preliminary Approval Order, and will deposit the remaining $200,000 within 30 days of the Effective Date.  *Id.*, § 7.4.

Settlement Class Members will have the option of claiming a cash payment of up to $500 for a Basic Award or of up to $5,000 for a Reimbursement Award.  S.A., §§ 2.2.1, 2.2.2. If there are insufficient funds to pay these amounts based on the number of claimants, the payment to each claimant will be reduced *pro rata*.  *Id.*, § 7.3.2.  On the other hand, if the total dollar value of all Approved Claims at the payment rates is less than the amount remaining in the Settlement Fund after the Attorneys' Fees and Expenses Award, Service Awards, Claims Administration costs, and any payments to the Claims Referee have been paid in full, the payment amount for all Approved Claims will be increased *pro rata* among all Settlement Class Members who submitted Approved Claims by up to a maximum of $1,000.00 for a Basic Award and $10,000.00 for a Reimbursement Award.  *Id.* § 7.3.1.  Any funds remaining in the Settlement Fund after distributions to Class Members will be distributed to a *cy pres* recipient, selected by the Parties with approval from by Court.  *Id.*, § 7.6.

### C.    Business Practice Changes

As part of the Settlement, Hanna has agreed to ensure that it takes the following reasonable steps to secure access to the e-commerce platform through which it processes credit card and debit card transactions:

a.    conduct a risk assessment of the Hanna data assets and environment consistent with the NIST Risk Management Framework;

b.    enable multi-factor authentication for all cloud services accounts;

c.    implement alerting processes for the establishment of new cloud services accounts;

d.    hire additional technical personnel;

e.    complete PCI Attestation of Compliance (AOC) in conjunction with a PCI-certified Qualified Security Assessor (QSA);

f.       conduct phishing and penetration testing of the Hanna enterprise environment and enterprise user base;

g.       deploy additional intrusion detection and prevention, malware and anti-virus, and monitoring applications within the Hanna environment;

h.       implement regular review of the logs of Hanna's e-commerce platforms; and

i.       hire a Director of Cyber Security.

S.A., § 2.5.   These changes will benefit those members of the Settlement Class whose information remains in Hanna's possession, and also other customers who make purchases from Hanna in the future.

**D.**     **Class Notice and Settlement Administration**

Notice will be given to the Settlement Class via email, by posting notice on a dedicated settlement website and through Hanna's website.  Due to the nature of Hanna's business, Hanna has email addresses for the potential Settlement Class Members, and individual notice will be given primarily by emailing the Summary Notice, attached to the Settlement Agreement as Exhibit C, to the email addresses associated with the accounts of Hanna customers in the United States who made purchases from Hanna's website during the Class Period. Joint Decl., ¶ 36.  A Long Notice, attached to the Settlement Agreement as Exhibit B, will also be posted on the settlement website: www.HannaSettlement.com, along with other important documents such as the motions for final approval and for attorneys' fees and expenses.  S.A., §§ 3.1(f), 4.2.2.  The notice documents are clear and concise and directly apprise Settlement Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B).  Furthermore, a toll-free number with interactive voice recognition, FAQs and an option to speak to a live operator will also be made available to address Settlement Class Members' inquiries.  S.A., § 4.2.2.  Additionally, Hanna will prominently post a link to the settlement website on the home page of its website for the entire Claims Period. *Id.*, § 4.2.3.

Moreover, Plaintiffs have retained Angeion, a nationally recognized and well-regarded class action settlement administrator, to serve as Claims Administrator, subject to the Court's

approval.  *See* Joint Decl., Ex. 2 (Declaration of Steven Weisbrot of Angeion Group, LLC in Support of Motion for Preliminary Approval of Class Action Settlement ("Weisbrot Decl.")). Angeion has estimated that notice and administration costs will total approximately $46,000. *Id.*, ¶ 19.

### E.   Attorneys' Fees and Expenses

Plaintiffs will also separately seek an award of attorneys' fees not to exceed 30% of the Settlement Fund (*i.e.*, $120,000), and for reimbursement of their reasonable costs and litigation expenses incurred, which shall be paid from the Settlement Fund. The motion will be filed at least thirty-five (35) days prior to the Objection Deadline and will be posted on the settlement website (www.HannaSettlement.com).   S.A., § 9.1.   Defendants have agreed to take no position with regard to the motion.  *Id.*

Class Counsel's fee request is well within the range of reasonableness for Settlements of this nature and size.  The Ninth Circuit has found attorneys' fees awards of 1/3 of the fund to be reasonable.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of total recovery); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (same).   Courts often look at fees awarded in comparable cases to determine if the fee requested is reasonable.  *See Vizciano v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.4 (9th Cir. 2002).  Cases settling for less than $10 million will often result in fees of over 30%.  *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (citing cases); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (finding that a 33% of attorneys' fees award in a $3.3 million settlement was reasonable); *Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2010 U.S. Dist. LEXIS 92067, at *15 (N.D. Cal. Aug. 9, 2010) (approving a fee award of 1/3 of the $4.5 million settlement fund).

Additionally, the fees paid in comparable data breach cases support the 1/3 fee award requested.  *See, e.g.*, Settlement Agreement, *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT (N.D. Ga. Mar. 7, 2016), ECF No. 181-2 (created a $13 million fund for consumers, paying an additional $6.5 million for internet and dark web monitoring services, which was eligible to be repaid from the fund); Order Granting Consumer

Plaintiffs' Motion for Service Awards, Attorneys' Fees and Litigation Expense Reimbursement, *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT (N.D. Ga. Aug. 23, 2016), ECF No. 261 (awarding $7.5 million in attorneys' fees, which amounted to 28% of the monetary benefit conferred on the class); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522-PAM, 2015 U.S. Dist. LEXIS 155137, at *4-5, 12-13 (D. Minn. Nov. 17, 2015) (establishing a settlement fund of $10 million and separately paying $6.75 million in attorneys' fees, which amounts to an award of 40% of the total funds paid by Target).

The fee request is also more than reasonable given that Plaintiffs' counsel have billed a total of 456 hours to date, for a total lodestar of $233,062, which amounts to a negative multiplier of 0.51. Joint Decl., ¶ 44. Counsel's lodestar will only continue to grow through Final Approval and beyond. Finally, Plaintiffs' counsel have incurred $7,515.36 in expenses to date for which they will request reimbursement. *Id*. These expenses include: mediation fees; legal research; filing fees; postage, scanning, printing and copying; service of process; attorney service fees; and conference calling charges. *Id*. Defendants, in conjunction with Angeion, will be providing and paying for the notice required under the Class Action Fairness Act (CAFA). *Id*., ¶ 45. The CAFA notice will be disseminated within ten days of the filing of the Settlement Agreement with this Court. Joint Decl., Ex. 2 (Weisbrot Decl.), ¶ 21.

### F. Service Awards to Named Plaintiffs

Plaintiffs in this case have been vital in litigating this matter, including providing the Hanna account information, credit card information, order history and credit card monitoring information. The Plaintiffs have been personally involved in the case and support the Settlement. Joint Decl., ¶ 46. Plaintiffs will separately petition the Court to award Representative Plaintiff Barnes $5,000 and $5,000 jointly to Representative Plaintiffs Gill and Sumerfield in recognition of the time, effort, and expense they incurred pursuing claims that benefited the Settlement Class. *See* S.A., § 9.2. The amount requested here is a typical amount awarded in other settled class action cases. *In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 U.S. Dist. LEXIS 75205, at *29-

30 (N.D. Cal. May 3, 2019) (request for $5,000 service awards granted); *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2017 U.S. Dist. LEXIS 23220, at *15 (N.D. Cal. Feb. 17, 2017) ($5,000 is the presumptively reasonable amount for an incentive award).

### G.   Releases

Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class will be deemed to have "completely and unconditionally released, forever discharged and acquitted the Released Persons from any and all of the Released Claims, and Representative Plaintiffs will be deemed to have also released Unknown Claims." S.A., § 8.1.  "Released Claims" are defined as those that "result from, arise out of, are based upon, or related to the Security Incident or Hanna's use of Salesforce's commerce cloud platform, that were or could have been alleged in the Litigation, based upon the facts alleged in the Complaint, including" those "relating to, based upon, resulting from, or arising out of (1) the theft, exposure or disclosure of Settlement Class Members' personal information; (2) the maintenance and storage of Settlement Class Members' personal information; (3) the Defendants' information security policies and practices; and (4) Hanna's notice of the Incident to Settlement Class members." *Id.*, § 1.28.  Therefore, Plaintiffs and the Class are releasing only those claims alleged in the Complaint, or that could have been alleged based upon the facts alleged in the Complaint.

## V.   ARGUMENT

### A.   The Court Should Certify the Class for Settlement Purposes

Before assessing the parties' settlement, the Court should first confirm the underlying settlement class meets the requirements of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632. The requirements are well known:  numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011)

#### 1.   The Rule 23(a) Requirements Are Met for Purposes of Settlement

The Settlement Class includes more than 200,000 individuals residing in the United States who made purchases from the Hanna website from September 16, 2019 to November 11, 2019; therefore, it readily satisfies the numerosity requirement. *See* Fed. R. Civ. P. 23(a)(1).

The commonality requirement, which requires that class members' claims "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke," is also met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, Plaintiffs' claims turn on whether Hanna's security environment was adequate to protect Settlement Class Members' PII. The resolution of that inquiry revolves around evidence that does not vary from class member to class member, and so can be fairly resolved—whether through litigation or settlement—for all Settlement Class Members at once.

Likewise, typicality and adequacy are easily met for purposes of settlement. Each proposed Representative Plaintiff alleges that each Hanna customer who made purchases from the Hanna website from September 16, 2019 to November 11, 2019, had their Personal Information compromised and were therefore impacted by the same inadequate data security that they allege harmed the rest of the Settlement Class. *See Just Film, Inc. v. Buono,* 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class."). The Representative Plaintiffs also have no conflicts with the Settlement Class; have participated actively in the case; and are represented by attorneys experienced in class action litigation, including data breach cases. *See Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003) (adequacy satisfied if plaintiffs and their counsel lack conflicts of interest and are willing to prosecute the action vigorously on behalf of the class); Joint Decl., ¶ 46.

### 2.    The Requirements of Rule 23(b) Are Met for Purposes of Settlement

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Here, the Settlement Class is maintainable  for purposes of settlement under  Rule  23(b)(3),  as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy.  *Id*. Plaintiffs' claims depend, first and foremost, on whether Hanna used reasonable data security

measures to protect consumers' PII. That question can be resolved using the same evidence for all Settlement Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile.  *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) … .'") (citation omitted).

Additionally, a class action is the superior method of adjudicating consumer claims arising from the Security Incident—just as in other data breach cases where class-wide settlements have been approved. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019); *Parsons v. Kimpton Hotel & Rest. Group, LLC*, No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015). Adjudicating individual actions here is impracticable:  the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film*, 847 F.3d at 1123. Therefore, the Court can and should certify the Settlement Class for purposes of the Settlement.

### B.    The Settlement Should be Preliminarily Approved

There is "relatively scant appellate authority regarding the standard that a district court must apply in reviewing a settlement at the preliminary approval stage." *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 U.S. Dist. LEXIS 110064, at *14 (N.D. Cal. Aug. 8, 2014).   In the past, courts have focused only on whether the proposed agreement appears to be non-collusive, is free of "obvious deficiencies," and generally falls within the range of "possible" approval. *See, e.g., In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007). Recently, however, several courts have criticized the notion that review at the preliminary approval stage need only involve a "quick look," or a watered-down version of final approval.  *See Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036 (N.D. Cal. 2016); *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1122 (N.D. Cal. 2016).   Rule 23(e)

further confirms the need for a more detailed analysis:

> **(e) Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal or compromise:
>
> > *(1)      Notice to the Class.*
> >
> > > **(A)** *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.
> > >
> > > **(B)** *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:
> > > > (i) approve the proposal under Rule 23(e)(2); and
> > > > (ii) certify the class for purposes of judgment on the proposal.
> >
> > *(2) Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
> > > **(A)**   the class representatives and class counsel have adequately represented the class;
> > > **(B)** the proposal was negotiated at arm's length;
> > > **(C)** the relief provided for the class is adequate, taking into account:
> > > > (i)  the costs, risks, and delay of trial and appeal;
> > > > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > > > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > > > (iv) any agreement required to be identified under Rule 23(e)(3);
> > > and
> > > **(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e). Thus, under the Rule 23(e), notice should be given to the class, and hence preliminary approval should only be granted, where the Court "will likely be able to" finally approve the settlement under Rule 23(e)(2) and certify the class for settlement purposes. *Id*.

Rule 23(e) also comports with the factors used in this Circuit to determine whether a

settlement should be given final approval:  (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011).  Each of these factors weighs in favor of approval here.

### 1.    The Strength of Plaintiffs' Case

Plaintiffs believe they have built a strong case for liability.  With respect to Plaintiffs' negligence claim, Plaintiffs believe they will be able to ultimately offer evidence that Defendants were negligent in failing to maintain reasonable and current data security programs and practices, which led directly to the loss of Plaintiffs' and the Class' PII.  Joint Decl., ¶ 49.

Defendants' alleged failure to protect the PII also constitutes a violation of the California Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.* ("UCL").  *See* ¶¶ 102-114.  The UCL prohibits any unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" with respect to the services provided to the Class.  Here Plaintiffs allege that Defendants violated the UCL by, *inter alia*, soliciting and collecting Plaintiffs' and Class Members' PII with knowledge that the information would not be adequately protected; and by storing Plaintiffs' and Class Members' PII in an unsecure, electronic environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Defendants to implement and maintain reasonable security procedures and practices to safeguard the PII of Plaintiffs and the Class Members.  *See* ¶¶ 104, 110.  Plaintiffs also allege that Defendants violated Cal. Civ. Code § 1798.100, *et seq.* by failing to prevent Plaintiffs' and Class Members' nonencrypted and nonredacted PII from unauthorized access and exfiltration, theft, or disclosure as a result of their Defendants' violation of their duty to implement and maintain reasonable security procedures and practices.  *See* ¶ 116.

Plaintiffs also believe they have a viable claim under the Virginia Personal Information Breach Notification Act., Va. Code Ann. § 18.2-186.6, *et seq.* by failing to disclose the Security incident in a timely and accurate manner.  ¶ 129.

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that Hanna's data security was inadequate and that, if they establish that central fact, Defendants are likely to be found liable under at least some of the liability theories and California laws Plaintiffs pled in their Complaint.  However, given the heavy obstacles and inherent risks Plaintiffs face with respect to the novel claims in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors preliminary approval of the Settlement. Joint Decl., ¶ 50.

### 2.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs believe their case is a strong one, all cases, including this one, are subject to substantial risk. This case involves hundreds of thousands of individuals, and a complicated and technical factual overlay lodged against technologically savvy and motivated defendants.   The damages methodologies, theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And—as in any data breach—establishing causation and damages on a class-wide basis is an unexplored legal frontier rife with uncertainty.

Although nearly all class actions involve a high level of risk, expense, and complexity— undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is an especially complex class in an especially risky arena. Historically, data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases of similar wide-spread notoriety and implicating data far more sensitive than at issue here have been found wanting at the district court level.   *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not

persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiffs had standing to bring a data breach lawsuit).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged; particularly in the area of damages. For now, data breach cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable deal is available.  The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

Additionally, Hanna is likely to argue that its website terms of use include a class action waiver and provide for mandatory arbitration, application of Oregon law, and venue in Oregon. While Plaintiffs feel they have valid arguments in opposition, Plaintiffs recognize the risk that Hanna may be successful on a motion to enforce the class action waiver, compel arbitration, transfer venue, and dismiss California claims.  This would deprive Plaintiffs of the ability to bring this action on behalf of the putative class, result in the dismissal of California claims, and require arbitration of claims or transfer to a different venue.

Finally, Plaintiffs expect defendant Salesforce would argue that it is merely a third-party cloud service provider to Hanna, with no contractual or other relationship with Plaintiffs, and that its enterprise customers customize, deploy, and secure their own instances of Salesforce's Commerce Cloud platform, undermining Plaintiffs' claims as to Salesforce, including their standing to sue Salesforce for any claim.  Joint Decl., ¶ 51.  While Plaintiffs feel they have valid arguments in opposition to this position, Plaintiffs recognize the risk that Salesforce may be successful on a motion to dismiss, leaving Hanna as the only defendant.  *Id*.  Furthermore, Hanna's business has been significantly affected by the COVID-19 global health crisis, which, together with the lack of insurance coverage for Plaintiffs' claims, creates a real risk that any judgment Plaintiffs obtained against Hanna would be difficult, if not impossible, to collect upon.  *See id.*, ¶ 10.  Therefore, given these risks and uncertainties, Plaintiffs believe the

$400,000 Settlement Fund is an excellent result and provides a substantial benefit to the Settlement Class.

### 3.    The Risk of Maintaining Class Action Status Through Trial

While Plaintiffs' case is still in the pleadings stage, the parties have not briefed and the Court has not yet certified any class treatment of this case. Class certification in consumer data breach cases is rare—first occurring in *Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017).  While certification of additional consumer data breach classes should follow, the dearth of direct precedent adds to the risks posed by continued litigation.

### 4.    The Amount Offered in Settlement

In light of the risks and uncertainties presented by data breach litigation, the $400,000 Settlement Fund achieved for the approximately 200,273 member Class in this case is an extraordinary result.  The Settlement here more likely than not provides 100 percent of a loss sustained by an individual consumer.  Joint Decl., ¶ 53.  Based on Class Counsel's experience in prior similar cases, and with the claims rates in those cases, the Settlement Fund of $400,000, the up to $500 Basic Award, and the up to $5,000 Reimbursement Award should be sufficient to recompense the legitimate individual claims and all class wide claims in the aggregate. *Id*.

Furthermore, an insurance company that specializes in data breaches, and publishes a regular newsletter on data breach legal issues and trends, wrote: "[D]efendants are unlikely to pay anywhere close to $1 per class member to settle an action brought by a class on behalf of 100 million potentially affected individuals."[7]  Yet, in this case, Defendants have agreed to pay *$2.00* per Settlement Class Member.  This exceeds the value per class member of other data breach settlements.  For example:

a.   The Home Depot data breach, which involved the theft of approximately 40

---

[7]    Marcello Antonucci, *et al.*, *Post-Spokeo, Data Breach Defendants Can't Get Spooked – They Should Stand Up To The Class Action Plaintiff Bogeyman*, BEAZLEY BREACH INSIGHTS (Oct. 27, 2016), https://www.beazley.com/documents/Insights/201610-data-breach-class-action-settlements.pdf (last visited November 19, 2020).

million consumers' payment data and 53 million consumers' email addresses, resolved with Home Depot creating a $13 million fund for consumers, paying an additional $6.5 million for internet and dark web monitoring services (which was eligible to be repaid from the fund), and $7.5 million in attorneys' fees. *See In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, ECF No. 181-2 (March 7, 2016) (Settlement Agreement); *id.*, 2017 U.S. Dist. LEXIS 221736, at *24 (N.D. Ga. Sept. 22, 2017) (order approving settlement).

b.  The Target data breach, which compromised the personal information of nearly 100 million consumers, resolved with Target establishing a settlement fund of $10 million and separately paying $6.75 million in attorney fees. *See In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522-PAM, ECF No. 358-1 (D. Minn. March 18, 2015) (Settlement Agreement); *id.*, 2017 U.S. Dist. LEXIS 75455, at *27-29 (D. Minn. May 17, 2017) (order certifying settlement class on remand from the 8th Circuit).

These comparisons are not intended to disparage the settlements achieved in those cases, but to underscore that Plaintiffs have capitalized on the strength of their case and achieved an outstanding resolution for the Class. For those Class Members who have incurred expenses as a result of the data breach, they will now be able to recover those expenses.

Moreover, together, the Settlement Fund and the corrective measures Hanna will take to improve its cybersecurity (S.A., § 2.5) provide Settlement Class Members with both compensation for the damages they sustained as a result of the Security Incident and improved security of their PII. Settlement Class Members will have the opportunity to claim either up to $500 for a Basic Award or up to $5,000 for a Reimbursement Award, subject to proration if there are insufficient funds to pay these amounts based on the number of claimants. However, these amounts may be increased by up to double if there are sufficient funds to do so. Angeion assumed for purposes of its estimate that 3% of Settlement Class Members are likely to file claims, which is within the range of similar settlements. Joint Decl., Ex. 2 (Weisbrot Decl.),

¶ 20.  Class Counsel, based upon their experience, also believe this to be an accurate estimate. Joint Decl., ¶ 19.[8]  Therefore, it is likely that the average award to Settlement Class Members who file valid claims will be approximately $38.00.  *Id.*, ¶ 18. Class Counsel believe this is an excellent result and provides substantial benefit to the Settlement Class.  *Id.*, ¶ 53.

### 5.      The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239.  Here, Plaintiffs vigorously and aggressively gathered all of the information that was available regarding Hanna's information which would be related to this case—including financial information about the company and publicly-available documents concerning announcements of the Security Incident and notice of the Security Incident to its customers.  Joint Decl., ¶ 54. The parties also informally exchanged non-public information concerning the Security Incident and the size of the Class in preparation for a successful mediation.  *Id.*

Although the parties did not engage in formal discovery, Class Counsel's collective decades of  experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiffs' and Settlement Class Members' interests  without expending hundreds of hours and enormous financial resources to come up to speed on the subject area.  *Id.*, ¶ 55.  Accordingly, Plaintiffs are well informed about the strengths and weaknesses of this case.

### 6.      The Experience and Views of Counsel

Class Counsel initiated this lawsuit when Hanna announced the Security Incident, which was based on publicly available information and may have impacted tens of thousands of

---

[8]      *See also, e.g., In re Anthem, Inc.*, 327 F.R.D. at 321 (claims rate was 1.8%); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573, at *9 (N.D. Ohio Aug. 12, 2019) (claims rate was 4%); *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2020 U.S. Dist. LEXIS 206507, at *25 (N.D. Cal. Nov. 4, 2020) (0.83% claims rate), citing *Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027-BLF, 2020 U.S. Dist. LEXIS 74801, at *19 (N.D. Cal. Feb. 5, 2020) (approving settlement with response rate of "about two percent").

---

Hanna customers. Proposed Class Counsel have substantial experience litigating complex class cases of various natures, and extensive exposure to the highest profile data breach cases in the country. For example, Mr. Yanchunis served as lead counsel in the Yahoo! data breach case which was litigated in this District and which was settled as a class and which settlement was approved this summer, he was lead counsel in the settlement of a data breach involving patrons of the Kimpton chain of hotels, and was a member of the Plaintiffs' Steering Committee and was one of the lawyers involved who assisted counsel in negotiating the settlement in Equifax, the largest settlement of a data breach case to date. Joint Decl., ¶ 48 & Ex. 3 thereto at 1. *See also id.*, Exs. 4 and 5. Having worked on behalf of the putative class since the Security Incident was first announced, evaluated the legal and factual disputes, and dedicated considerable time and monetary resources to this litigation, proposed Class Counsel endorse the settlement without reservation. *Id.*, ¶ 56.

### 7.   The Reaction of the Class Members to the Proposed Settlement

Because notice has not yet been given, this factor is not yet implicated; however, Representative Plaintiffs all support the Settlement. Joint Decl., ¶ 46.

### 8.   Lack of Collusion Among the Parties

The parties negotiated a substantial Settlement Fund, making available $400,000 to resolve this case. The parties did not commence discussion of fees until agreement on all substantive portions of the class resolution had been reached, and both the class portion of the resolution and the fees were negotiated at arm's-length under the direction of the parties' mutually agreed-upon mediator Martin Quinn, who has extensive experience in handling class action cases. Therefore, the Court can be assured that the negotiations were not collusive. *See G. F. v. Contra Costa Cty.*, No. 13-cv-03667-MEJ, 2015 U.S. Dist. LEXIS 100512, at *43 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted).

### C.   The Court Should Approve the Proposed Notice Program

Rule 23 requires that prior to final approval, the "court must direct notice in a

reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Under Rule 23(c)(2)(B), "[t]he notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*.

Here, because Settlement Class Members' email addresses are available, the chief vector of direct individual notice will be via email.  Within 30 days of receiving the Settlement Class Member data from Hanna, the Claims Administrator will email the Summary Notice to Settlement Class Members.  S.A., § 4.2.1. & Ex. C.  Even prior to Rule 23 expressly permitting electronic notice, courts permitted email notice in similar circumstances.  *See, e.g., Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 331 (C.D. Cal. 2016).   Moreover, on the dedicated settlement website (www.HannaSettlement.com), Settlement Class Members will be able to review the detailed Long Notice, which provides clear and concise information with respect to all the relevant aspects of the litigation, including the information necessary for Settlement Class Members to make informed decisions with respect to whether to opt out of the Settlement Class or object to the proposed Settlement.  S.A., § 4.2.2 & Ex. B; Fed. R. Civ. P. 23(c)(2)(B). A toll-free number with interactive voice recognition, FAQs and an option to speak to a live operator will also be made available to address Settlement Class Members' inquiries.  *Id*. Hanna will also prominently post a link to the settlement website on the footer of the home page of its website for the entire Claims Period. *Id*., § 4.2.3.

Accordingly, the content and method of dissemination of the proposed Class Notice fully comports with the requirements of due process, the now-amended Federal Rules of Civil Procedure, and applicable case law, and the Court should approve the proposed Class Notice Program and direct that notice be distributed as agreed by the Parties.

**D.      Appointment of the Settlement Administrator**

In connection with implementation of the Notice Program and administration of the settlement benefits, the Parties request the Court appoint Angeion to serve as the Claims

Administrator.  Angeion has a trusted and proven track record of supporting over 2,000 class action administrations and the distribution of over $12 billion to class members.  Joint Decl., Ex. 2 (Weisbrot Decl.), ¶ 8.  Angeion was selected after blind competitive bids were solicited from 7 claims administrators; Angeion was selected as the lowest bid.  *Id*., ¶ 43.  Notice and administration is expected to cost approximately $46,000 and will be paid out of the Settlement Fund.  *Id*., ¶ 17.  These costs amount to approximately 23 cents per Settlement Class Member and, based upon Class Counsel's experience, are reasonable.  *Id*., ¶ 42.[9]

### E.    Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel have extensive experience prosecuting class action cases, and specifically data breach cases. *See* Joint Decl., Exs. 3, 4 and 5 (firm resumes). Accordingly, the Court should appoint John Yanchunis of Morgan & Morgan Complex Litigation Group, M. Anderson Berry of Clayeo C. Arnold Professional Law Corporation, and Rachele Byrd of Wolf Haldenstein Adler Freeman & Herz LLP as Class Counsel.

### F.    Schedule for Final Approval

Once the Court has ruled on the motion for preliminary approval, the timeline for providing notice, opting out of the Settlement Class, and submitting claims will begin to run. Plaintiffs provided an agreed-upon schedule in the Proposed Order granting this Motion.

## VI.    CONCLUSION

In light of the significant benefits provided by the Settlement, Plaintiffs respectfully

---

[9]      Class Counsel's firms' have engaged Angeion over the last two years in six cases.  *See* Joint Decl., ¶ 43.

1    request that the Court grant Plaintiffs' Unopposed Motion for Preliminary Approval.

2    Date: November 19, 2020             Respectfully Submitted,

3

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**

4

5                        By:        */s/ Rachele R. Byrd*

6                             RACHELE R. BYRD
byrd@whafh.com

7                             BRITTANY N. DEJONG
dejong@whafh.com

8                             750 B Street, Suite 1820
San Diego, California

9                             Telephone: (619) 239-4599
Facsimile: (619) 234-4599

10

11                             M. ANDERSON BERRY
aberry@justice4you.com

12                             LESLIE GUILLON
lguillon@justice4you.com

13                             **CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**

14                             865 Howe Avenue
Sacramento, CA 95825

15                             Telephone: (916) 777-7777
Cellular: (415) 595-3302

16                             Facsimile: (916) 924-1829

17                             JOHN A. YANCHUNIS (*Pro Hac Vice*)
jyanchunis@ForThePeople.com

18                             **MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**

19                             201 N. Franklin Street, 7th Floor
Tampa, Florida 33602

20                             Telephone: (813) 223-5505
Facsimile: (813) 223-5402

21

22                             *Attorneys for Plaintiffs*

23

24

25

Hanna:26731

26

27

28